UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>ROBIN DIMICELI,<br><br>Movant. | No. 2:12-cr-328-WBS-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Robin Dimiceli ("movant"), proceeding with counsel, has filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.[1] ECF No. 213. The government has filed an opposition. ECF No. 216. Movant has filed a reply. ECF No. 218. For the reasons stated hereafter, the motion should be denied.

## Background

Movant was a mortgage loan officer and licensed real estate agent and, in those capacities, she assisted two brothers – Volodymyr Dubinsky and Leonid Doubinski – in a builder bailout scheme. Movant aided the brothers in submitting Uniform Residential Loan Applications ("URLAs") on behalf of straw buyers with the goal of purchasing residential properties in areas where real estate decline had made legitimate sales difficult. The URLAs contained false

---

[1] This motion was assigned, for statistical purposes, the following civil case number: 2:18-cv-2036-WBS-EFB.

statements regarding purchaser income, employment, assets, and intent to reside at the purchased property as a primary residence. Movant received commissions for the submission of these false loans. Additionally, movant personally acted as a straw buyer herself and purchased two properties by submitting false information regarding her income on URLAs. In total, movant was responsible for submitting false URLAs for six properties (either on behalf of other straw buyers or herself) – all of which were ultimately foreclosed on and sold for less than the mortgage debt owed.

After a trial that lasted from October 27, 2015 to November 10, 2015, a jury convicted movant of six counts of mail fraud in violation of 18 U.S.C. § 1341 and six counts of making false statements on loan and credit applications in violation of 18 U.S.C. § 1014. Probation calculated that the total loss attributable to movant's actions was $2,076,917.[2] Movant was ultimately sentenced to thirty-six months imprisonment and a twenty-four month term of supervised release.

Movant raises several claims alleging the effectiveness of her trial/sentencing counsel. She argues that her counsel rendered ineffective assistance by: (1) failing to challenge the loss calculation analysis in the pre-sentence report; (2) failing to challenge the government's conclusion that she received $270,000 in profits from her fraud; (3) failing to seek a competency evaluation for movant despite counsel's acknowledgement that movant was unable to testify at trial due to post-traumatic stress disorder ("PTSD") and a prescription drug addiction; (4) failing to either explain the risks of multiple representation or seek a conflict waiver as a result of her law partner's representation of movant's co-defendant; and (5) failing to consult with a handwriting expert to challenge the government's claim that movant forged signatures on loan applications.

In a separate claim, movant also argues that the Bureau of Prisons ("BOP") failed to designate movant on the reporting date directed by the court.

/////

---

[2] The total loss was calculated by measuring the difference between the loan amount and foreclosure sale amount for all six properties.

2

## Legal Standards

### I. Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.") Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

Claims or arguments raised on appeal are not cognizable in a § 2255 motion. *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claims previously raised on appeal "cannot be the basis of a § 2255 motion."); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."). *See also Davis v. United States*, 417 U.S. 333, 342 (1974) (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law). Conversely, claims that could have been, but were not, raised on appeal are not cognizable in § 2255 motions. *United States v. Frady*, 456 U.S. 152, 168 (1982) (a collateral challenge is not a substitute for an appeal); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal"); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities

to overturn their convictions on grounds which could have been raised on direct appeal"). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (same). "Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255 collateral review." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).

Claims challenging the sufficiency of the evidence are not cognizable in § 2255 motions. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against him" was not cognizable in § 2255 motion); *Barkan v. United States*, 362 F.2d 158, 160 (7th Cir. 1966) ("a collateral proceeding under section 2255 cannot be utilized in lieu of an appeal and does not give persons adjudged guilty of a crime the right to have a trial on the question of the sufficiency of the evidence or errors of law which should have been raised in a timely appeal"); *United States v. Collins*, 1999 WL 179809 (N.D. Cal. Mar. 25, 1999) (insufficiency of the evidence is not a cognizable attack under section 2255).

II. Ineffective Assistance of Counsel Claims

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) her counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 562 U.S. at 106. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434.

5

Analysis

As an initial matter, the government requests that the court enter an order finding that movant has waived her attorney-client privilege with her previous counsel – Kresta Daly – regarding the claims raised in this motion. The government states that, if such an order is entered and movant does not elect to abandon her claims, it will request leave of court to either obtain a declaration or seek a deposition from Ms. Daly for the purposes of responding to movant's claims. Notwithstanding this request, the government then proceeds to address the substance of movant's claims and argue that none are meritorious. As discussed below, none of movant's claims are persuasive and in spite of the clear partial waiver of attorney-client privilege occasioned by Movant's allegations against Ms. Daly, there is simply no need to obtain Ms. Daly's testimony.

    I.    <u>Counsel's Failure to Challenge the Pre-Sentence Report Loss Calculation Analysis</u>

Movant argues that counsel who represented her during trial and sentencing rendered ineffective assistance by failing to challenge the pre-sentence report ("PSR") loss calculation. She notes that, based on the loss amount, the PSR recommended a sixteen-level enhancement. ECF No. 166 at 8. At movant's sentencing hearing, her attorney stated that she was "troubled" by the fact that there was no evidence of loss. ECF No. 182 at 43. The court agreed that there was no evidence, noted that this was not unusual in sentencing hearings, and offered to hold a sentencing evidentiary hearing if counsel desired it. *Id.* at 43-44. Movant's counsel declined it. *Id.* at 44.

Movant now calls her prior counsel's decision to decline an evidentiary hearing "inexplicable." She points to a Ninth Circuit decision – *United States v. Berger*, 587 F.3d 1038 (9th Cir. 2009) and argues that its holding compels a district court to determine how much loss a defendant actually caused. *Berger* holds that a district court, in calculating loss, is required "to show that actual, defendant-caused loss occurred[.]" *id.* at 1045, but it did not expressly endorse or require a district court to adopt any particular methodology in fulfilling that requirement. *Id.* (holding that "courts may employ various methodologies to determine loss and that loss need not be established with precision . . ."). Further, the Ninth Circuit already had the opportunity to

consider the loss calculation methodology used by the court in this case in sentencing movant. It held:

> The district court did not plainly err in calculating loss under U.S.S.G. § 2B1.1. The court followed the procedure that we have approved expressly. *United States v. Hymas*, 780 F.3d 1285, 1293 (9th Cir. 2015); *United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014). The presentence report supported the court's calculation. Because Defendant declined the court's invitation for an evidentiary hearing on the loss amount, the presentence report constituted evidence. *United States v. Romero-Rendon*, 220 F.3d 1159, 1163 n.4 (9th Cir. 2000).

*United States v. Dimiceli*, 693 F. App'x 689, 690 (2017). In a footnote, the court recognized movant's reliance on *Berger* in her appeal and stated:

> Defendant relies on *United States v. Berger*, 587 F.3d 1038 (9th Cir. 2009), to argue that the sentencing enhancement was inappropriate because there was no actual loss in this case. Even assuming that *Berger* applies in the mortgage fraud context, however, Defendant waived any argument that actual loss was lacking when she expressly declined the opportunity for a hearing on the subject of actual loss.

*Id.* at 690 n. 1. Indeed, one of the cases relied upon by the reviewing panel – *United States v. Morris*, 744 F.3d 1373 (9th Cir. 2014) – speaks directly to mortgage fraud. In *Morris*, the Ninth Circuit held that:

> We adopt the two-step approach first articulated by the Eastern District of Virginia, and subsequently adopted by the Second, Sixth, and Tenth Circuits. In calculating loss in mortgage fraud cases, these Circuits hold that the first step is to calculate the greater of actual or intended loss, where actual loss is the reasonably foreseeable pecuniary harm from the fraud. *This amount will almost always be the entire value of the principal of the loan, as it is reasonably foreseeable to an unqualified borrower that the entire amount of a fraudulently obtained loan may be lost.* The second step is to apply the "credits against loss" provision and deduct from the initial measure of loss any amount recovered or recoverable by the creditor from the sale of the collateral. This second calculation is made without any consideration of reasonable foreseeability.

744 F.3d at 1375 (emphasis added).

Movant argues that *Morris* is inapplicable because the test articulated therein applies only after there is a determination of "actual, defendant-caused loss." ECF No. 218 at 17. That is, she claims that *Berger* demands a threshold finding – that there was some concrete, provable loss attributable to her – only after which a court may proceed to an application of the *Morris* test.

7

As the Ninth Circuit pointed out in its opinion on direct appeal, however, it is unclear that *Berger* applies in the context of mortgage fraud. *Berger* dealt with the question of shareholder loss with respect to a publicly traded company ("Craig") whose leadership: (1) made public misrepresentations regarding Craig's financial status; (2) misstated Craig's financial condition in Securities and Exchange Commission filings; and (3) engaged in fraudulent accounting schemes in order to borrow funds necessary to sustain Craig's operation. 587 F.3d at 1040-41. The district court in *Berger* found that, as a consequence of defendant's fraud, Craig shareholders had sustained losses in the amount of 2.1 million dollars. *Id.* at 1045. The Ninth Circuit took issue with the methodology used to calculate this amount and explained:

> In determining that the shareholder loss was $ 2.1 million in this case, the district court employed a counterfactual approach. The method examined the effect on the stock value of other, unrelated companies after accounting irregularities were disclosed to the market. Using that method, the court determined that the average depreciation in value was 26.5%. That figure was applied to the value of Craig's initial public offering. The court's method appears to have assumed that defendant-caused shareholder loss existed, and only then purported to measure that loss. Moreover, that measure of loss was not based on Craig's finances or on the actual effect of Berger's fraud, but rather on data from other companies in previous years and different economic conditions. More importantly, it was based on cases in which there had been disclosure of accounting irregularities to the market, despite the fact that Craig's accounting irregularities were never disclosed while its stock was still publicly traded. As a result, because the method did not properly establish that Berger's sentence was based only on all harm that resulted from the acts or omissions of the defendant, it was an abuse of discretion.

*Id.* at 1046 (internal citations and quotation marks omitted). Movant has not offered any cogent argument for why *Berger* should be read widely rather than narrowly. The loss valuation methodology concerns raised in *Berger* apply to the valuation of publicly traded stock. And *Morris* – a far more relevant decision which was handed down after *Berger* – makes no mention of the earlier case.[3] Instead, *Morris* directs courts to look to the guidelines in cases like the one at

---

[3] The Ninth Circuit's decision in *United States v. Hymas* – handed down after *Morris* – does cite to *Berger*, but not for any proposition helpful to movant. Instead, *Hymas* echoed *Morris* by concluding that "the district court correctly calculated the losses by taking the principal amount of the loan and subtracting any credits from the subsequent sale of the property." 780 F.3d 1285, 1293 (9th Cir. 2015).

8

bar. 744 F.3d at 1374 ("The difficulty with Morris's argument is that the Sentencing Guidelines explicitly dictate how to measure loss in mortgage fraud cases that involve collateral."). Application Note 3(A)(i) provides that the "actual loss" for which a defendant is liable is "the reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1, App. Note 3(A)(i). And "reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." § 2B1.1, App. Note 3(A)(iv). As noted in *Morris*, that amount will typically be the principal of the loan. Thus, movant's attempt to move the goalposts and demand a showing not mandated by the guidelines is unpersuasive. *See United States v. Turk*, 626 F.3d 743, 750 (2d Cir. 2010) ("[T]he Guideline does not hold defendants accountable only for certain or near-certain losses, but for losses that were 'reasonably foreseeable pecuniary harm.'").

In any event, there was evidence of actual loss in this case. As noted *supra*, the Ninth Circuit ruled that, in the absence of an evidentiary hearing on the loss amount, the presentence report in this case constituted evidence. Obviously, movant contends that her counsel should have moved for such a hearing when the court invited it, but she has offered no evidence[4] that such a hearing would have produced evidence favorable to her. Thus, she cannot show that she was prejudiced by her counsel's decision not to pursue that option. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008) (speculative allegations do not establish *Strickland* prejudice).

The court notes that, at movant's sentencing hearing and in her current motion, she referenced a "bundling theory." At the sentencing hearing, movant's counsel had the following exchange with the court:

> **Counsel:** So I – what I think, Your Honor, is that – and I'm distinguishing between actual loss and intended loss – there is no actual loss, because everybody knows the bank bundled these loans up and sold them off and the banks didn't lose any money.

---

[4] Movant argues that an evidentiary hearing "would have compelled the government to produce the banks as witnesses to explain whether they suffered a loss and what amount they recovered from the sale of collateral . . . ." ECF No. 213-1 at 27. That may be, but she has not offered any evidence that the government would have been unable to produce the witnesses or make a showing that the lenders suffered actual loss as a consequence of movant's fraud.

9

> **Court:** We don't know that, but it's possible that they didn't lose any money. It's also possible that they did, because you heard testimony at trial that if there is some problem later on, after they bundle up the loan and sell it to somebody, it could come back to the bank and the bank could suffer an actual loss.

ECF No. 182 at 44-45. Movant references the same argument now, stating "[u]nder the *Hymas/Morris* test, if the banks bundled and sold the loans, the application of their credits against the loss likely through recovery likely exceeds the value of the loan." ECF No. 213-1 at 27. But as before, she offers no evidence that the banks actually bundled the loans at issue here or that such bundling insulated them from any actual loss. And, practically speaking, adopting this approach makes little sense. Even if the banks bundled the loans and managed to escape significant losses themselves, it does not follow that movant's fraud was victimless. The "bundles" – now containing mortgage loans that were fraudulently obtained and, thus, less likely to be profitable – were made much riskier and passed on to other victims, namely the parties that bought the asset-backed securities of which the fraudulent loans were supposed to help secure. Moreover, acceptance of this argument would create perverse incentives. It would effectively encourage procurement of fraudulently-obtained mortgage loans insofar as the direct lender would (assuming the bundling theory is correct) have no provable losses and any downstream, post-bundle losses would be far more difficult to prove.[5]

For the foregoing reasons, this claim lacks merit and should be rejected.

II. <u>Counsel's Failure to Challenge the Government's Calculation of her Profits</u>

Movant argues that, at sentencing, her counsel should have challenged the PSR's finding that she obtained $270,000 dollars in profits as a consequence of her fraud. She notes that, during the time period relevant to the calculation, she split all profits with a business partner and would only have received $135,000. Movant's co-defendant, whom the government determined had received $112,000 dollars from his fraud, received a lighter sentence. It follows, she contends, that by failing to argue that she made only $135,000 in profits her counsel "deprived her of a

---

[5] That is, the risk presented by a fraudulently obtained mortgage might be diffused in a bundled instrument. Other loans – non-fraudulent but still poor performing - might be present in the bundle, for instance. It would be difficult (perhaps impossible in some instances) to dissect a bundle and determine what loss should be directly attributable to a defendant's fraud.

10

viable ground to argue for a lesser sentence due to the avoidance of unwarranted sentencing disparities between two equally culpable codefendants." ECF No. 213-1 at 29.

Movant cannot demonstrate that her counsel's failure to raise this argument prejudiced her. The court identified factors other than profit amount which informed its decision to sentence movant's co-defendant to a six-month sentence.

> **Court:** I want to make it clear that the reason Mr. Khalfin got the six-month sentence he did was not because he was rich and not because he could afford to pay a fine. The reason that he got the sentence he did was because of all the sentencing factors, the life that he had led up to the point that he committed this crime was exemplary, the amount that he benefitted was very small, the Court took into account his physical problems and arrived at the sentence it did in light of all of the sentencing factors.

ECF No. 182 at 79. And, as the government points out, the $270,000 dollar amount was not part of the sentencing guideline calculations.[6] Thus, movant cannot demonstrate a substantial likelihood that, even if her profit had been determined to be $135,000 rather than $270,000, her sentence would have been lighter.

### III. Counsel's Failure to Seek a Competency Evaluation for Movant

Movant points out that, at her sentencing, her counsel acknowledged that movant had not testified in her own defense at trial due to suffering from post-traumatic stress syndrome ("PTSD") and abuse of prescription medications. During her colloquy, movant argued her innocence and disavowed much of her alleged involvement in the fraudulent loan scheme. ECF No. 182 at 75-76. The court asked why she had not testified at trial and her counsel offered:

> **Counsel:** I advised Ms. Dimiceli not to take the stand. It is her decision, and she is well aware of the fact that it was her decision. I advised her not to take the stand because her recollection of specific events in this case is at best poor. And I think there is a million reasons why that is, and it relates to overuse of prescription medications and PTSD.

*Id.* at 77.

/////

---

[6] Movant's attorney did argue that she had not actually profited from her fraud insofar as she used the money to pay the mortgage on a home that was ultimately short-sold when she could no longer afford it. ECF No. 182 at 52-53. The court rejected this argument. *Id.* at 52-55.

11

Movant now states that this acknowledgement indicates that she was unable to properly assist in her defense and, thus, counsel was constitutionally ineffective in failing to seek a competency hearing prior to trial.

The government argues that the bare assertions raised in the immediate motion are insufficient to establish incompetence, especially when juxtaposed with movant's normal behavior at trial, during her interview with probation, and at sentencing. It notes that movant's trial counsel assessed that movant's prescription drug issues affected her, but not enough to support even a diminished capacity defense. ECF No. 169 at 10 (Movant's Objections to PSR) ("While not amounting to a defense at trial, Ms. Dimiceli's conduct is mitigated by the fact that her judgment was clouded by her prescription drug abuse at the time the conduct in this case occurred."). Finally, the government points out that the conditions at issue – PTSD and abuse of prescription medications – are not, standing alone, substantial evidence of incompetence.

This claim fails. First, movant's trial counsel – who was best situated to assess movant's ability to understand and assist in her defense – concluded (as noted *supra*) that her PTSD and drug abuse did not support a defense at trial. *See Deere v. Cullen*, 718 F.3d 1124, 1146 (9th Cir. 2013) (noting that defense counsel was uniquely positioned to assess [a defendant's] ability to understand the proceedings and his legal options."). Second, movant has failed to point to any evidence indicating that she was actually legally incompetent. Indeed, the record evidence cuts against such a finding. At sentencing, the court concluded that she spoke eloquently and was more than capable of expressing herself. ECF No. 182 at 76. The PSR made note of movant's mental health issues, but provided no indication that any her mental health issues were so severe as to render her incapable of understanding the proceedings or assisting her counsel. ECF No. 166 at 11, ¶¶ 44, 46. Finally, the court agrees with the government that having PTSD and abusing prescription drugs – while obviously serious mental and physical issues – are not *per se* indicative of legal incompetence. *See Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) ("In cases finding sufficient evidence of incompetency, the petitioners have been able to show either extremely erratic and irrational behavior during the course of the trial . . . or lengthy histories of acute psychosis and psychiatric treatment . . .") (internal citations omitted). It bears emphasizing

that movant's counsel made no reference to problems relating to behavior or comprehension; she stated only that movant had such a poor recollection of events that putting her on the stand would not have been advantageous to her. Incompetence demands something more than unsubstantiated allegations of poor memory. *See United States v. Monge-Rios*, 336 F. App'x. 761, 763 (9th Cir. 2009) (unpublished) (noting that "unsubstantiated allegations of memory difficulties do not reasonably support a finding of incompetency.").

> IV. <u>Counsel's Failure to Explain to Movant the Dangers of Multiple Representation or to Seek a Conflict Waiver</u>

Movant argues that her counsel rendered ineffective assistance by failing to inform her that counsel's former law partner represented a co-defendant prior to trial in this case. In its response, the government persuasively points out that this claim is doomed to failure by its lack of specificity. Movant fails to allege: (1) the name of the former law partner at the center of the alleged conflict of interest; (2) which co-defendant they represented; and (3) any specifics regarding the nature of the alleged conflict of interest. A vague possibility of conflict – as movant alleges here – is not sufficient to establish a violation of her right to conflict free representation. *See United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998) (holding that the movant "must prove actual conflict, not just a possibility of conflict, through a factual showing on the record.") (citing *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991)) (internal quotation marks omitted).

> V. <u>Counsel's Failure to Consult with a Handwriting Expert to Challenge the Government's Assertion that Movant Forged Signatures on Loan Applications</u>

Movant argues that her counsel should have consulted with a hand-writing expert in order to undermine the government's contention that she forged names on loan documents. She contends that counsel's failure to do so violated the duty to conduct a reasonable investigation into areas that might support her client's innocence. Movant states that, had her counsel undertaken such a consult, she would have discovered that movant's signature does not match the

/////

/////

alleged forgeries on the loan documents.[7]  Finally, movant argues that a handwriting analysis that undermined the government's forgery allegations would likely have compelled a different jury verdict.

The government points out that it relied primarily on witness testimony to establish her completion and submission of loan applications she knew to be fraudulent and reception of undisclosed kickbacks. *See*, *e.g.*, ECF No. 160 at 54-64 (testimony of Jhonvieve Soria); ECF No. 161 at 53-72 (testimony of Monica McGuire).  Moreover, the evidence of forgeries purported to show that movant forged the signatures of other people.  ECF No. 160 at 224; ECF No. 161 at 10-11, 14 (testimony of Mandy McRae).  Further, the government argues that movant has failed to offer anything other than bare speculation that the outcome of her trial would have been different if her counsel had retained a hand-writing expert.

The court finds that movant has failed to demonstrate a substantial likelihood that her trial outcome would have been different if her counsel had retained a hand-writing expert. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). In a single line, movant concludes "[i]f the jury had heard the information undermining the government's contention that [movant] forged the loan documents, it probably would have returned a different verdict." ECF No. 213-1 at 34.  She offers no argument explaining what evidence, if any, supports this conclusion.  Critically, she does not make any attempt to explain how the proposed expert testimony would have undercut the other, non-forgery related evidence supporting her conviction (referenced *supra*).  Thus, this claim fails.

VI. Failure of the Bureau of Prisons to Designate Movant on the Reporting Date

Movant's final claim is that the BOP failed to designate her to an institution by the deadline required by the court.  The government correctly points out that a section 2255 motion is not the proper vehicle for raising this claim.  This claim goes not to the validity of movant's sentence, but only its execution.  Such a challenge should be brought pursuant to section 2241 in

---

[7] Movant states that, at some point after her conviction, she consulted with a hand-writing expert whose findings supports her claim.  She states that she will disclose the expert's findings to the government and make the expert available at an evidentiary hearing on this petition.  ECF No. 213-1 at 34 n.2.

14

the custodial court. *See Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) ("[P]etitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.").

VII. <u>Affidavit of Kresta Daly</u>

In conjunction with her reply, movant offers – for the first time – an affidavit from Ms. Daly. ECF No. 218-1. Therein in Ms. Daly effectively concedes incompetence and states: (1) she was unaware of the relevant case law in calculating loss – i.e. *Berger, Morris, and Hymas*; (2) that the foregoing decisions support movant's contention that the loss in this case is zero; and (3) had she been aware of the relevant law she would have accepted the court's offer of an evidentiary hearing. *Id.* at 2. Ms. Daly also states that she failed to argue that movant had a business partner who received half the proceeds of the relevant fraud and that this failure was neither strategic nor tactical. *Id.* at 2-3. Finally, she states that she neglected to consult a hand-writing expert to challenge the government's implication that movant forged signatures on loan applications and that this omission was neither tactical nor strategic. *Id.* at 3.

Assuming the truth of Ms. Daly's assertions as to her own incompetence, the court finds that movant's claims still fail. As noted *supra*, *Strickland* demands a reasonable probability that the result of the relevant proceedings would have been different in the hands of capable counsel. Movant has failed to establish as much for the reasons articulated in the foregoing analysis.

<u>Conclusion</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 213) be DENIED;
2. The Clerk be directed to close the companion civil case, 2:18-cv-2036-WBS-EFB; and
3. The Clerk be directed to enter judgment accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: August 19, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE